Good morning. We're happy to sit in Newark, save some of us a little bit of traveling. Before we begin, though, I must take a moment to thank our friend Judge Ackerman, who's the District Court for the District of New Jersey. Judge Ackerman has been a judge for 54 years, and he is still at the top of his game. He sits with the Sixth Circuit, he sits with the Third Circuit, and those of us on the Third Circuit who are always without the very, very grateful for the help, and we really couldn't function well at all if we didn't have help of the caliber that's given by Judge Harold Ackerman. Thank you very much. Do you agree with me, Judge Greenberg? Absolutely. Good. If he had said no, I don't know what I would have done. It would have actually been tongue-tied for once, right? I used to think I sat a long time, since I was sworn on December 20, 1973, to the Third Circuit, so it's 35 years. You men make me feel like a baby, and that's great. We will hear argument in Jammus v. Pilatus Aircraft. May it please the Court, good morning. I am John Vale. For the plaintiffs with me, my co-counsel is Anthony Taracone. I would like to reserve three minutes for rebuttal. Thank you. Your Honors, I think the reigning paradigm here for jurisdiction is the Asahi case, and I think we meet the more stringent factors in Asahi, and I think we meet Justice O'Connor's more stringent test, the intent plus test, in Asahi, particularly- That's assuming we even get the stream of commerce. Well, let me suggest- Show us where the stream of commerce is here. Well, the stream of commerce- Starts in Pilatus, Switzerland, correct? Starts in Pilatus, Switzerland, and is directed at the United States. Well, and this plane, this particular plane, went from Switzerland to France to Switzerland to Massachusetts to Rhode Island- That's correct. And then crashed in Pennsylvania. That's correct. How was that within the stream of commerce? The stream of commerce test is a subjective test of what Pilatus is trying to do with its marketing. And the fact that one piece, one droplet of the stream, might make it to Pennsylvania by a different route than the mainstream is of no consequence. One of the key points there is that Pilatus clearly had the intent of marketing to the entire United States. So that following your argument, there would be personal jurisdiction over Pilatus in any state in which an injury occurred, is that correct? That's correct. Okay. Well, let me- Under the district court's rule, if I understand it, I don't think that there's any jurisdiction anywhere in the United States over Pilatus in a situation like this, is that right? I think that's absolutely- I think that's a correct reading of the district court's opinion. And I think that is wrong as a matter of law. This is a company that purposefully avails itself of the entire market of the United States, derives about half of its revenues from its marketing here. And if I could direct you to two- Well, you know, we should really not talk about the entire United States. I mean, we have two rulings here. One dealt with Pennsylvania, whether there's personal jurisdiction in Pennsylvania. And the other dealt with the transfer to Colorado. To Colorado. Whether there would be jurisdiction over Pilatus in Colorado. So I think it's not helpful to talk about any state in the United States. Why don't we concentrate on those two states? Well, let me take you to your decision in Pennzoil, which I think is instructive and if not compels, at least suggests that jurisdiction does exist here. Because in Pennzoil- What's here? Here. Define here. Exists in this case in Pennsylvania. In Pennsylvania. Yes. And in the Pennzoil case, you have Pennzoil versus Colelli. Colelli was a manufacturer in Ohio. Manufactured this solvent that he sold only in Ohio to oil drillers. Only in Ohio. Those drillers sold their oil to a Pennzoil refinery in Pennsylvania. Pennzoil sued Colelli in Pennsylvania. And this court found that despite Colelli never making any significant- He didn't have the kind of stream of commerce that Pilatus did going toward Pennsylvania. He had- I hope not. He- All his contacts with Pennsylvania. You found that Justice O'Connor's test in Asahi was met in that case because she listed four factors that could be used to show intent to market in a state and to avail oneself of the state. And two of those factors were the intent to do it. You found the intent to do it because he knew that these solvents were causing some damage in Pennsylvania, yet he continued to sell them to his Ohio clients. Now, he also- Another factor was opening channels of communication. And he had some back and forth with Pennzoil about how he might change his product in order to avail himself of the Pennsylvania market. So he designed his product for the market and he opened channels of communication. But your claims don't arise out of or relate to Pilatus' stream of commerce contacts with Pennsylvania. Absolutely they do. How do they? Because when Pilatus sold- From time to- Two ways. First of all, remember that there are over $10 million worth of Pilatus planes in Pennsylvania. And Pilatus has-Pilatus opened a channel of communication with those planes. Listen, its website. Our customer support is among the best- Are you in general jurisdiction or specific jurisdiction? Specific jurisdiction. Our customer support is among the best in aviation and we are proud to offer this service around the globe over the life cycle of a product, continuing to each owner at least $10 million worth of planes in Pennsylvania with a channel of communication to the owners. Also, FAA regulations require Pilatus to keep an open channel of communication with these owners. They require constant updates about service, pieces, conditions, what's known about these planes for maintenance purposes. Open channel of communication, one of the tests in Asahi for Justice O'Connor. Designed for the market. Clearly designed for the U.S. market. FAA type certificate. No question there. Your question is about Pennsylvania. This is a plane- The scheme of commerce is a specific jurisdiction question, isn't it? Yes. This plane flies 1,700 miles in one shot. It's marketed as an SUV of the skies. It needs, it depends for its value on the ability to fly in airspace of any state in the United States. If that national marketing strategy is to succeed, the value of the plane depends on- You're really arguing a national context theory, aren't you? I am not arguing a national context theory. What I am arguing is that Pilatus had an intent to market to each of the 50 states. Each of the 50 states. Let me ask you this. As I understand it, correct me if I'm wrong, the plane involved in this crash in Pennsylvania originally was sold by Pilatus to a French company, is that correct? That's correct. Only coming into the hands of the present owner, Rhode Island LLC, is that correct? That's correct. After subsequent third-party sales to and from a Swiss company and a Massachusetts company, is that correct? That's correct. The plane was not kept in Pennsylvania, is that correct? That's correct. But was only flown there from Florida as part of a trip to a university in Pennsylvania. That's correct. That's correct. And let me analogize, Your Honor, to a concept from insurance law that's familiar from your decisions in the CRS's bestest cases. In insurance law, when an insurer insures a risk in a given place, that has jurisdictional consequences. The insurer is found to be purposefully availing himself of that market. And in the Eli Lilly case, that's the seminal case from the D.C. Circuit on that, the rationale for that is straighted. The rationale is that when the insurance company sells the insurance policy, it gains the value. We're talking personal jurisdiction. Let me move off. You'll have rebuttal time on this. But let me move to the transfer issue for a moment. What would you do with the other defendants if for some reason we were to decide to send this back to the district court to determine whether interests of justice warrant transfer to Colorado? You've got other defendants here over whom there'd be no personal jurisdiction in Colorado. What would you do with them? We would face the decision of whether to have multiple actions pending in different jurisdictions. Well, maybe I would. Let me throw this at you. What if I were to say, and I'm not saying, I'm not finding as a matter of law, that it can't be transferred as long as there are, unless there's jurisdiction over all the defendants? You'd have to make the decision real quickly, wouldn't you? Yes, we would. I won't force you. But that is something that would have to be considered. And what are you going to do in any interest of justice analysis, which, of course, the district court didn't have to reach because you determined there would not be personal jurisdiction over Pilatus in Colorado, of which I'm not so sure myself. Your Honor, I want to point you particularly to two other cases. That's giving them a heads up where I'm going to go with them. To two other cases that deal with the question of this marketing to the nation as a whole. One from the Arizona Supreme Court, AU Berete, that's 892 P. 2nd, 1354. Is this responsive to my transfer question? These go to your question about is marketing to the United States as a whole marketing to Pennsylvania? Well, that was a question ten minutes ago. I mean, I would like to know about Colorado. Well, there is jurisdiction in Colorado because, again, through the distributorship that was created after the FAA type certificates were awarded, Pilatus is generating about half of its revenues through that. Under the Colorado test for jurisdiction, that distributor becomes an essential agent of the parent, and that justifies jurisdiction under Colorado. Are you arguing an agency theory or that the direct contacts of Pilatus with Colorado or a combination of both? The agency. Okay. I'm out of time. I'll be back on rebuttal unless you have further questions. Thank you. Thank you. Mr. Berman. Thank you, Your Honor. May it please the Court, Bruce Berman with me and my colleague, Judge Greenberg. Would you keep your voice up, please, sir? Yes, certainly, Judge Greenberg. Thank you. I'm sorry. My name is Bruce Berman on behalf of Pilatus Aircraft. With me is my colleague, Jeffrey Baltresac. And we, of course, represent the Atelier. I don't know to what extent the Court wants to hear from me on these issues with respect to jurisdiction in Pennsylvania because I think the comments that were made from the bench cover most of the things. I can't. I'm having trouble. I'm really having trouble hearing you. Oh, I'm sorry. Is this the right microphone? I think that's probably better. Just stay close to me. Thank you. I will do that. I will do that. My apologies. On the jurisdiction in Pennsylvania issue, I don't know to what extent the Court leads or has questions with me because I think the questions that you've asked at the Council cover most of the points that I wanted to make, that really there was no extreme commerce issue in this case. The Pennsoil litigation on which Council relies was a case in which the product went knowledgeably into the jurisdiction. It was a situation where 60% of the oil went to Pennsylvania refiners with the knowledge of the producer of the solvent. Could you maybe back up a little from the mic because I think maybe you're just too close to me. I had a question for you. As I understand the whole jurisdictional issue, it's a question of fairness to the defendant. And I happened to be watching last night television, the news. There's still people that actually watch the 6.30 news, not many, but some. But anyway, they pointed out that this Turkish airliner crashed near Amsterdam and there could be a problem with the plane. And not long ago there was a plane crash near Buffalo. Suppose this plane hit a house on the ground and killed somebody that had nothing to do with the plane except the plane killed them when it hit the house. Is it fair to say to the estate of that person, if you want to sue Pilatus, even though your theory is, as the theory apparently was with Boeing, that the plane was defective, that you must go to Switzerland and do that? The fact of a local plaintiff in a jurisdiction would certainly add a factor on the third step of the analysis. There are the first two mandatory steps of the purposeful availment and the relatedness. But you wouldn't even reach the third step, apparently, under your theory. So you could say to this person and to the family of the decedent, you must go to Switzerland even though you have evidence that the plane was defective and they manufactured it. Somebody brought the house down, a person at a settlement conference, when they asked her what she wanted and she said justice. And the lawyers found that very funny because of the gallows humor. But the question is, is it fair? I'm not trying to be funny. It just doesn't strike me as right that that grieving family, where the evidence is, or at least as to what happened, is in Pennsylvania, not as to the defect necessarily, but as to the accident, has to go to Zurich. I can imagine instances where there would be jurisdiction in the location of the injured person. For example, if the aircraft was in the stream of commerce in that circumstance. It wasn't in the stream of commerce at all. It was sold, resold, private. So you're out of that. Nevertheless, the defect was an original defect. That's the theory. It might be that there would be jurisdictions in the United States other than the state of the air. Let me give you a for instance. Supposing there is a plane that is sold by Pilatus Switzerland to your Colorado subsidiary and then sold through an independent dealer. That's the stream of commerce, correct? Yes. And let's say that plane crashed. You would agree that there would be jurisdiction over you, at least in Colorado, wouldn't you? Over you, of course, is a question of whether it's the manufacturer or whether the— I don't know. I don't know that you'd even have to distinguish. That may be. I think that's entirely possible. It is not your position, is it, that Pilatus cannot be sued in the United States for any airplane crash that occurs here? That's not our position. There are circumstances where I think that could happen. What is your position? Are you saying that you would be uncomfortable in the state of Colorado? Well, I don't know that I'd put it that way. Jurisdictionally? The difficulty I think that the court has in this particular case is that we have a very, very slim record. A very what? We have a very slim record. There was no jurisdictional discovery taken by the plaintiffs. Maybe there should be. In SGI Air Holdings there was a fair amount of discovery. Perhaps, but they've never sought it. But do you really need it here? Assuming that Pilatus and your subsidiary are separate corporate entities, Pilatus flies every one of its PC-12s destined for customers in the western hemisphere into Colorado, correct? For the hemisphere that— That's right. And in 2005 and 2006, about half of Pilatus's revenue, its $200 million, came from the subsidiary. That's very substantial. And every one of the sales was directed to Colorado. These are direct contacts. These are not agency contacts. Wouldn't you think that a fairer argument could be made that those direct contacts alone are sufficient for general jurisdiction here over Pilatus? For general jurisdiction in Colorado? In Colorado, yes. On a sufficient record, that might be the case. But that is the record, isn't it? I don't think so. No, you have your annual report where it lists the number of sales, which lists the amount per year, which lists all of the things I just said. And that's a matter of record in this case. That is true. But we do have some case law in the circuit that sales alone are not necessarily sufficient for general jurisdiction. Let me ask you this question. Who made up the rule, and I find it rather strange, that the transferring court would determine that the transferee court had or didn't have jurisdiction? Because one would think, well, the court should determine whether a particular court has jurisdiction. Laying aside appeals from that decision, is that court? And I would just wonder, why would a district court in Pennsylvania have the right? I suppose a separate suit was brought in Colorado, and the district court thought it did have jurisdiction, and the Pennsylvania court said, well, it didn't. It struck me as a strange rule. Who made up that rule? Your Honor, you make a very good point, because the transfer statute, which is 1636, is the statute under which the Pennsylvania court decides whether jurisdiction exists. A prima facie case of jurisdiction exists, correct? Yes. Only a prima facie case. And then you could get to Colorado, and then the Colorado court may have to find that there is, in fact, jurisdiction. I believe the law is, as interpreted in the circuit under 1636, that the transferee court has no ability to make that, must accept the jurisdiction determination of the transferor. And one of the reasons why this is a problem, Judge Greenberg, and why I agree with the underlying concerns of your question, is that a number of circuits in the country have interpreted 1636 as applicable to subject matter jurisdiction only, not personal jurisdiction. But we, the Third Circuit, and that's where we're sitting. And in the Tenth. And in the Tenth. That's true. And the idea behind the statute being that you filed in the wrong court, and you've made a mistake, that you should be able to, the court should be able to. But it's not a mistake, because if all the district court has to find, and this is just hypothetical, if all the district court has to find is a prima facie case of personal jurisdiction, that does not foreclose another district court from saying, well, there may have been a prima facie case. But there is not, as a matter of law, personal jurisdiction in this case. So it's not a law of the case kind of thing. That would make sense. But the case law that I've seen suggests that the transferee court does not have the right to make an independent substantive determination on jurisdiction. There's not a lot of law on this statute. True. True. And here, I think to the extent I can get a sense of the Supreme Court's questions, I think that at least the court appreciates the arguments that we've made, however you feel about the ultimate outcome, with respect to the very narrow, specific jurisdictional inquiry. I just say that the Third Circuit has really done a very careful job of outlining the methodology, the analysis, the analytical path, and has stated expressly in the counter case for the benefit of litigants. And it has done it in a very specific way. And I think the district judge was right in following that path faithfully. And I think that the analytical process would compel a conclusion of the absence of specific jurisdiction because of the inability to connect the specific context with Pennsylvania and the agency. Where should this case be heard? Well, the plaintiffs have represented, the appellants represented to the trial court that there was no jurisdiction. In one of the briefs, it was referenced in the district judge's decision. And the day before, business day, before they sought the transfer, they filed a lawsuit against Gladys in the state of New Hampshire, in the district of New Hampshire. And so we are defending that case right now, the identical case to the one that was filed. Well, you have different defendants other than Gladys in the cases, I think. That's true. But the case against Gladys there is the same case based on the same allegations of wrong. Well, surely the opinion in this case was proffered by you to the district court in New Hampshire, wasn't it? It really hasn't yet. Well, there's a motion to dismiss pending. There's a motion to dismiss. Well, what was the basis of the motion to dismiss? The motion to dismiss is a jurisdictional motion. But if anything, in looking at the characteristics of Pennsylvania versus New Hampshire, if there's a Gladys dealer in New Hampshire, there's a service there. I mean, the appellants have been able to find jurisdiction for cases so far in both Rhode Island and in New Hampshire. So whether or not ultimately the court there would find that there's jurisdiction in New Hampshire for Gladys, we don't know. Well, they're probably waiting for us, so they don't have to decide it at all. I'm not at all certain that's the case. Anything is possible. In this case, I don't know that it's known, but what part of the system is there in Switzerland? Does Switzerland have court suits like this with juries and damages like this? I mean, frankly, Switzerland is a great country in many, many times. You're not off the road when you're in Switzerland. But I just wonder, is there a system like ours? I'm not very expert, I'm afraid to say, on the judicial system in Switzerland. But my belief is that they have a system that is sufficient to redress wrongs and to compensate for an injury. You could have a situation in which the jurisdiction, which would have jurisdiction, doesn't even have torts. I don't think so. Someone told me that you can't bring a tort suit for an automobile accident in New Zealand. And that it's 100% like no fault. I don't know if it's true. The argument has never been made by the opponents here. They have never suggested in any brief in the lower court or here that there would be any difficulty finding redress in versus Switzerland. They're dealing, obviously, with very sophisticated counsel who has filed in multiple jurisdictions in the United States by choice. Among the reasons that we opposed the transfer was not solely on the question as to whether there was general jurisdiction or not in Colorado. I don't believe you answered my question. Would you feel comfortable if this case were heard in Colorado? I think that if this case were properly filed in Colorado, that we would probably have more difficulty making the jurisdiction up in New Zealand. Is that a yes? Comfortable. I believe in the way you've asked that the answer would be yes. I'm trying to ascertain the degree of comfort you would feel. That's a hard question to answer, Your Honor. But I believe as you're asking it, the answer would be yes. I don't know that that's a question that anyone could really answer. I know. I'm trying my best. Thank you, Mr. Chief. Thank you. Thank you very much. Thank you. Rebuttal. Now, what do you do with the fact that you told the district court there's no jurisdiction in Colorado? There's no personal jurisdiction in Colorado. Do you say, whoops? We've taken inconsistent positions. Our first position was wrong, and we stand on our second position, Your Honor. And to respond to your question at the beginning, ultimately, if this case were transferred to Colorado and we needed to dismiss other defendants, we would. We would prefer to leave the two cases open and consolidated for discovery. Sure, and I'd like to be Queen of England, but my father wasn't king. I have brothers. Judge Greenberg, back to a comment you had about the stream of commerce. And again, I want to emphasize stream of commerce measures the subjective intent of the manufacturer. That's what's important. That's what Justice O'Connor and Justice Brennan say in Asahi. Pilatus had the intent to market to all of the U.S. And I wanted, in the Uberti case that I told you, the Arizona Supreme Court case, there, the Italian manufacturer delivered the goods FOB Milan to a U.S. distributor. So the manufacturer has only a European sale. And in that case, you still find stream of commerce. And if I can, I'd quote to you from the court there. Are you going back to your stream of commerce into Pennsylvania argument? Yes. I tell you, we have been throwing them over the plate to you in Colorado. Why don't you take that in flight? Well, because I think that one's easy. I think there's clearly jurisdiction in Colorado under the SGI holding, under the essential agent theory. So you don't go along with my, that Pilatus has direct contacts. Pilatus does have direct contacts. That's why I asked you before. And those, too, go to the question of jurisdiction in Colorado. There's great intercourse between Pilatus Switzerland and Pilatus. There's continuing monitoring. But most importantly, there's half the revenues of the company coming out of the subsidiary in Colorado. That's the direct contact. That's one of two direct contacts. And they're bringing all those planes there. The planes physically are delivered to Colorado? To Colorado, yes. They're not just fly past directly to the Pilatus? No. I gather they're finished there, too. They're finished there. And critically, each individual plane needs to get an FAA airworthiness certificate. You are so, that is underlying everything you're saying. But that's done in Colorado by pieball. But that's going back to your national contacts thing, which has no merit. Speaking only for myself, that has no merit. You get the FAA certification, as far as I'm concerned. I don't know what that adds. You have all these other things that you can be invoking as to Colorado without getting back into national contacts because of the FAA certifications. Well, one other case I'd like to point you to where, again, Your Honor, I think that's relevant, is Tobin v. Astra Pharmaceuticals, 993 F2nd 528, a Sixth Circuit case, where the Sixth Circuit found that because a Dutch drug company saw FDA certification for a drug, that that meant they were marketing the drug to every state in the United States. And critically, they took no action, like Pilatus here, to exclude Pennsylvania from their marketing. It's a 50-state strategy, not simply a United States strategy. You had an opinion that said, look, the judge was right about Pennsylvania. But as far as Colorado is concerned, there are these contacts, and it may very well be that there is a prima facie showing, maybe it's not too strong, but that there is a prima facie showing of jurisdiction, so we'll transfer this case. Then the Colorado court can do what it thinks is appropriate. Yes, you could do that. And then not really answer the question because there are, you're conceding, you're arguing that certain, well, you're not conceding, obviously, you're arguing that there are certain contacts in Colorado that don't exist in Pennsylvania. I'm actually arguing that because of the stream of commerce Pilatus created, those contacts go to each of the 50 states. And both the Uberti and Tobin cases are strong support for that. Thank you. We will take the case under advice.